# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **TECARLO B.[1],** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 7:20-CV-473** |
| ) | |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,[2]** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tecarlo B. ("Tecarlo"), challenges the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Tecarlo asserts that the Administrative Law Judge ("ALJ") erred by failing to adopt the opinion of his treating physician that he is totally disabled, and by improperly assessing his subjective allegations.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Tecarlo's Motion for Summary Judgment (Dkt. 16) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 18).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Tecarlo was not disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Tecarlo filed for SSI on January 11, 2018, claiming that his disability began on February 13, 2017. R. 15. Tecarlo later amended his alleged onset date to January 11, 2018. Id. The state agency denied Tecarlo's applications at the initial and reconsideration levels of administrative review. R. 69–99. On August 20, 2019, ALJ Jeffrey Schueler held a hearing to consider Tecarlo's claim for SSI. R. 38–68. Tecarlo was represented by counsel at the hearing, which included testimony from vocational expert Jerry Wells. On September 19, 2019, the ALJ entered his decision analyzing Tecarlo's claims under the familiar five-step process[3] and denying his claim for benefits. R. 15–32.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the

The ALJ found that Tecarlo was insured at the time of the alleged disability onset and that he suffered from the severe impairments of left hip arthritis with total hip replacement; lumbar spine degenerative disc disease; osteoarthritis of the knees, right hip and elbow; obesity; asthma; and cubital tunnel syndrome. R. 17. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 18–19.

The ALJ concluded that Tecarlo retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 19. Specifically, the ALJ found that Tecarlo can lift/carry twenty pounds occasionally and ten pounds frequently; can stand/walk for two hours and sit for six hours in an eight-hour workday, with a sit/stand option at will; can occasionally push/pull, climb or crawl; can frequently balance, stoop, kneel, or crouch; should avoid concentrated exposure to cold, humidity, vibration, pulmonary irritants, chemicals or hazards; and needs a job that allows frequent handling, fingering or feeling. R. 19.

The ALJ determined that Tecarlo could not perform his past relevant work as a lumber stacker, roofer helper or sanitation worker. R. 30. However, the ALJ determined that Tecarlo could perform other jobs in the national economy, such as document sorter or sorter. R. 31–32. Thus, the ALJ concluded that Tecarlo was not disabled. R. 32. Tecarlo appealed the ALJ's decision, and the Appeals Council denied his request for review on July 1, 2020. R. 1–5.

---

requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Tecarlo asserts that the ALJ erred by finding unpersuasive the opinion of his treating physician, Michael Wolfe, M.D., that he is totally and permanently disabled. Tecarlo asserts that the record supports Dr. Wolfe's opinion and the ALJ did not provide sufficient reasoning to find him capable of performing a range of sedentary work. The Commissioner asserts that the ALJ appropriately considered the physician opinions in the record, Tecarlo's treatment history and subjective allegations, and his disability decision is supported by substantial evidence.

### A. Medical History

Tecarlo stopped working in 2006, when he was 27 years old. He was incarcerated from 2007 through 2016. R. 47. Tecarlo underwent a total left hip replacement in March 2017. R. 48, 472. Tecarlo had physical therapy for six weeks (R. 496), and had good range of motion in May 2017. R. 489. Tecarlo was discharged from physical therapy on May 26, 2017, and reported having no hip pain and doing well when walking. R. 483.

In February 2018, Tecarlo followed up with Michael Wolfe, M.D., and reported swelling in his hip, and a sharp pain along his iliac crest for the past 4 days. R. 729. X-rays of Tecarlo's pelvis and hip showed well-fixed and positioned components without complications. Dr. Wolfe did not believe Tecarlo's hip was generating the pain. Id.

Tecarlo returned to Dr. Wolfe in May 2018, and noted that his activities of daily living were unlimited, but complained of stiffness in his left hip, particularly in the morning. Dr. Wolfe noted that Tecarlo "would like to return to work, but notes having a disability hearing this Saturday." R. 733. On examination, Tecarlo had a normal gait and good range of motion without guarding. Dr. Wolfe provided a letter in support of Tecarlo's disability claim, stating that

4

Tecarlo "may not return to work. He is totally and permanently disabled from gainful employment because of a history of hip replacement." R. 735.

Tecarlo underwent a consultative examination with Sehrish Memon, M.D., on May 19, 2018. R. 585. Tecarlo reported his current symptoms as numbness, stiffness and pain in his left hip. He complained of a constant, dull, achy, throbbing pain in his left hip that radiates to his left knee. He reported being limited to sitting/standing for 2–5 hours a day and walking half a mile. On examination, Tecarlo had normal muscle strength, normal sensory examination, a positive straight leg test on the left, no joint swelling, erythema, effusion or deformity. R. 587–88. Tecarlo had tenderness to palpation of the left hip and left knee. Dr. Memon noted that Tecarlo was able to button and unbutton a shirt, pick up a coin from a table, grasp a pen, write a sentence, lift and carry light objects without difficulty. He was able to squat and rise from a position with difficulty. He was able to rise from a sitting position without assistance and had some difficulty getting up and down from the exam table. He could walk on heels and toes with moderate difficulty, and could not stand or hop on his left leg. R. 588.

Dr. Memon determined that Tecarlo could sit for 2 hours, stand for 2 hours, and walk 15 minutes at a time, in an 8-hour workday. R. 589. He also found that Tecarlo can carry 10 pounds frequently, and 20 pounds occasionally; and can occasionally bend, stoop, crouch and squat. R. 589. Dr. Memon determined that Tecarlo had no manipulative limitations with reaching, handling, feeling, etc. Id.

On May 30, 2018, state agency physician Jack Hutcheson, M.D., reviewed Tecarlo's records and determined that his hip surgery is a severe impairment, and he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand and walk 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; perform unlimited push and pull; occasionally climb ramps

5

and stairs; occasionally crawl; frequently balance, stoop and kneel. R. 73–77. Dr. Hutcheson found that Tecarlo should avoid concentrated exposure to extreme cold, humidity, vibration, fumes, dusts, gasses and odors. Dr. Hutcheston explained that Tecarlo's current exam shows a slow gait, no assistive device, positive straight leg raising on his left, and tenderness to palpation of the left hip and left knee. Dr. Hutcheson found Tecarlo capable of light work with appropriate limitations. R. 77.

On August 4, 2018, state agency physician David Bristow, M.D., reviewed Tecarlo's records on reconsideration and agreed with Dr. Hutcheson's conclusion that Tecarlo can perform a range of light work. R. 87–89.

In August 2018, Tecarlo visited Dr. Wolfe complaining of sharp pain in his left hip and popping in his left knee, causing him to nearly fall the week before. R. 738. Dr. Wolfe noted a mild varus malalignment without significant ligamentous laxity. Tecarlo's sensation was intact, his muscle strength was normal, and his hip range of motion was pain-free. Dr. Wolfe diagnosed early degenerative joint disease in the left knee, with mechanical symptoms, and a potential symptomatic meniscus tear. Dr. Wolfe ordered an MRI, which revealed no evidence of fracture or abnormal bone marrow signal. R. 727. Tecarlo had moderate degenerative disc disease at L5-S1, and his visualized tendons were intact and unremarkable. Id.

Tecarlo returned to Dr. Wolfe on September 28, 2018, complaining of pain in his left lower back, buttock and greater trochanter. R. 748. He reported that the pain was aggravated with laying or sitting in a certain position. Tecarlo also complained of nerve pain shotting from his left elbow to his hand, causing numbness in his left ring and little finger. Tecarlo brought disability papers for Dr. Wolfe to complete. Dr. Wolfe diagnosed degenerative disc disease at L5-S1, and noted that there is no explanation for his hip pain. Id.

6

Dr. Wolfe completed a medical source statement and determined that Tecarlo can lift less than 10 pounds occasionally; stand and walk less than 2 hours in an 8-hour workday; sit less than 2 hours in an 8-hour workday; needs to rest at least 3 hours during an 8-hour workday; has limited push and pull in his upper and lower extremities; can never climb ramps, stairs, etc.; can never kneel, crouch, crawl or stoop; and can occasionally balance. R. 591–93. Dr. Wolfe found that Tecarlo would be absent from work more than three times a month due to his impairments. R. 594.

Tecarlo visited the pain management clinic in January 2019, and noted pain in his left lower back, buttock and greater trochanter. He also complained of a click in his knee when he bends it. R. 760. On examination, Tecarlo had normal gait, edema in both lower extremities, no pain with flexion, mild pain with extension, full strength in his lower extremities, negative straight leg raise, mild crepitus in his left knee with flexion and extension but full range of motion. R. 763. Robin Behr, Np-C assessed lumbar degenerative disc disease and chronic left knee pain, and recommended a nerve block for the left knee. R. 764.

On January 28, 2019, Tecarlo was evaluated for his left upper extremity ulnar nerve symptoms. R. 792. Tecarlo reported numbness in his left ring and small finger with activity. He denied difficulty with gait or balance, difficulty with left upper extremity use, or overhead activity. Id. On examination, Tecarlo had full composite grip of his left hand and full extension of his digits. R. 794. An EMG conduction study was abnormal. Cesar Bravo, M.D., diagnosed mild left sensory carpal tunnel syndrome, left ulnar motor neuropathy at the left elbow, and recommended cubital tunnel splints and activity modification. R. 794–95.

Tecarlo visited the pain clinic in March 2019, and reported good pain relief from the block in his left knee. R. 807. He was scheduled to follow up with a radio-frequency ablation, and continued to take meloxicam for pain. Id.

Tecarlo went to the emergency room in June 2019, complaining of right foot pain and swelling after his motorcycle fell onto his right leg. R. 896. Tecarlo was advised to follow up with an orthopedist. R. 899.

In July 2019, Tecarlo was treated for right knee pain and swelling after being hit by a car. R. 830. Dr. Wolfe noted that Tecarlo walked in and out of the clinic without support, and determined that Tecarlo's injuries will improve with rest and elevation. Id.

### B. RFC and Treating Physician Opinion

Tecarlo asserts that the ALJ erred by finding Dr. Wolfe's opinion that he was totally and permanently disabled not persuasive, and by instead giving weight to the opinion of consultative physician Dr. Memon. Pl. Br. Summ. J. p. 18–19. Specifically, Tecarlo asserts that the ALJ used circular language, applied the "sit and squirm" test by relying on his own observations of Tecarlo at the hearing, incorrectly determined that he "could do some stooping," and ignored evidence documenting Tecarlo's pain and diminished range of motion.

An RFC is the most a claimant can still do despite his impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner determines the RFC based on all the relevant evidence in the claimant's record and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible complaints. See Mascio v. Colvin, 780 F.3d 632, 638–40 (4th Cir. 2015). SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996).

8

Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). However, in Mascio, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Tecarlo filed his application in January 2018; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions in his case.[4] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's]

---

[4] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

9

medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ will consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. The most important factors considered are supportability and consistency.[5] Id. The ALJ is not required to explain the consideration of the other three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

---

[5] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ reviewed Tecarlo's testimony, his treatment records and the medical opinions in the record in detail. R. 20–30. Specifically, regarding the medical opinions, the ALJ reviewed the opinions of Drs. Hutcheson and Bristow that Tecarlo could perform a range of light work, and found them persuasive "because they were generally consistent with a sedentary residual functional capacity based on the combination of his impairments." R. 25.  However, the ALJ reduced the amount of standing and walking based on the physical examination findings in Dr. Memon's consultative examination. The ALJ then stated in detail the medical findings and testimony that supported this conclusion, including Tecarlo's complaints of lingering pain and mobility in his left hip; Dr. Wolfe's physical examinations showing only mild abnormalities in Tecarlo's left hip by mid-2018; that Tecarlo's osteoarthritis in his knees and hips and lumbar degenerative disc disease were treated mainly with pain medication; that Tecarlo had left knee genicular nerve blocks and a left radiofrequency denervation; that he was hit by a car in June 2019 but Dr. Wolfe suspected he would improve with rest and elevation; that he was obese which may contribute to his pain and mobility issues; that he has a stable gait, etc. See R. 25.

The ALJ considered Dr. Memon's consultative opinion that Tecarlo could sit/stand for 2 hours in an 8-hour day; walk 15 minutes at a time; and carry 10 pounds frequently and 20 pounds occasionally. R. 26. The ALJ found Dr. Memon's opinion persuasive "because a sedentary residual functional capacity was generally consistent with the medical evidence of record."  The ALJ determined that Tecarlo also had environmental limitations, such as avoiding concentrated exposure to cold, humidity, vibration, fumes, chemicals or hazards.  The ALJ also determined that Tecarlo could frequently stoop, bend, crouch and squat; and would need an option to sit-stand at will. Id.  The ALJ again listed in detail the treatment records and testimony supporting his conclusion. R. 26.

11

The ALJ reviewed Dr. Wolfe's opinions that Tecarlo is "totally and permanently disabled" due to his hip replacement, and his physical assessment that Tecarlo could occasionally lift or carry less than 10 pounds; sit/stand/walk less than 2 hours in an 8-hour workday; would need to rest 3 hours in the day due to pain; had limited push and pull with all extremities; could never climb, kneel, crouch, crawl and stoop, and would be absent from work more than 3 times a month. R. 27. The ALJ found both of Dr. Wolfe's opinions unpersuasive because they are not consistent with Dr. Wolfe's treatment records, and are more restrictive than warranted by the medical evidence of record. Id.

The ALJ noted that Tecarlo had a successful hip replacement in 2017 with few lingering issues in 2018. Despite his complaints of stiffness, he admitted in May of 2018 that he could perform unlimited activities of daily living and he would like to return to work. R. 27, 733. Physical examinations of Tecarlo's hip showed a well-healed scar. The ALJ noted that Dr. Wolfe's "relatively mild physical examination results in May of 2018 were inconsistent with the claimant being 'totally and permanently disabled' due to his 2017 left hip replacement." R. 27.

The ALJ determined that Tecarlo has a sedentary residual functional capacity based on his impairments, but it was not as reduced as suggested by Dr. Wolfe. The ALJ explained:

> For example, he could lift or carry twenty pounds instead of less than ten pounds occasionally. In addition, he could occasionally instead of never climb and crawl as well as frequently instead of never stoop, kneel, and crouch. Never performing any postural movements was simply unrealistic. The claimant sat through the hearing as well as stood and walked in and out of the hearing room without assistance, so it was clear that he could do some stooping. He could also stand or walk for two hours instead of less than two hours in an eighth [sic]-hour workday. In addition, he did not need three hours of rest every workday. Although Dr. Wolfe regularly treated the claimant for his orthopedic issues since 2017, his physical examination and treatment notes indicated far fewer limitations than the assessment.

R. 27–28.

The ALJ also reviewed Tecarlo's alleged symptoms, and determined that his statements concerning their intensity, persistence and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. R. 28. The ALJ noted that Tecarlo's treatment has been essentially routine and/or conservative; that his treatment has been generally successful in controlling his symptoms; that Tecarlo reported activities of daily living such as preparing simple meals, doing household chores, shopping for groceries, picking his children up from after-school programs; and that Tecarlo was not entirely compliant with his prescribed treatment as he did not use a knee immobilizer and crutches as recommended after his car accident in July 2019. R. 28–29. The ALJ noted that Tecarlo went long periods without treatment or medical appointments for his impairments in 2018 and 2019, that he stopped having regular appointments with Dr. Wolfe in September 2018; and did not follow up with Dr. Bravo for his cubital tunnel syndrome after January 2019. R. 30.

The ALJ assessed the medical opinions in the record, explained the weight he gave each of their conclusions and provided reasoning to support his conclusions. Contrary to Tecarlo's assertion, the ALJ did cite to specific evidence in support of his conclusion that Dr. Wolfe's opinion was more restrictive than warranted by the medical evidence. The ALJ specifically referenced the evidence in the record relating to Tecarlo's impairments and his ability to function. See R. 27–28. The ALJ did not rely exclusively on his observation of Tecarlo's movements at the administrative hearing, but noted his observations together with evidence in the record and Tecarlo's testimony, to find that he was not as limited as Dr. Wolfe determined. See Spitzbarth v. Comm'r, No. ADC-17-2934, 2018 WL 4705784 at *8 (D. Md. Sept. 28, 2018) (The ALJ did not perform an impermissible "sit and squirm" test when the ALJ considered "a multitude of other evidence, including Plaintiff's own testimony and the mini mental-status

13

examination findings, in addition to her own observations from the hearing to explain why Dr. Ansel's opinion was given little weight."). Here, the ALJ did not ignore Tecarlo's pain and limitations; but rather, acknowledged Tecarlo's impairments and resulting symptoms and accommodated those issues by limiting Tecarlo to a restrictive range of sedentary work. The ALJ provided an RFC consistent with the consultative examiner's conclusions, and more restrictive than recommended by the state agency physicians. The ALJ provided good reasons not to wholly adopt Dr. Wolfe's opinion that Tecarlo's left hip replacement is work-preclusive.

The ALJ provided the required narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a sufficient summary and explanation of Tecarlo's medical records, his hearing testimony, and the ALJ's conclusions. I find that the ALJ's analysis of the physician opinions are supported by substantial evidence.

### C. Subjective Allegations

Tecarlo also alleges that the ALJ failed to properly assess his subjective allegations, and erred by failing to consider the extent to which he performs activities of daily living. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine

14

the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added).

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Tecarlo asserts that the ALJ erred by discounting his allegations due to his daily activities such as performing household chores, taking medications, making his bed, etc. Pl. Br. Summ. J. p. 25 . Tecarlo alleges that the ALJ failed to acknowledge that he performs daily activities intermittently with frequent rest breaks, citing to Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017) for support. Id. at 15–16. In Brown, the court held that the ALJ erred by discounting the claimant's credibility based upon daily activities without acknowledging the limited extent of those activities as described by the claimant or explaining how those activities showed that he could sustain a full-time job. Id. The Court also found that the ALJ erroneously relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test, and manage his own money. Id. at 271.

15

Here, the ALJ properly considered Tecarlo's testimony regarding his daily activities. The ALJ noted that Tecarlo reported "preparing simple meals, doing household chores such as the laundry or dishes, shopping for groceries, picking his children up from after school programs, and watching television in his 2018 report." R. 29. The ALJ also noted that Tecarlo told Dr. Memon that his typical daily activities consisted of watching television, preparing meals, and doing housework." Id. The ALJ noted that such activities are "not limited to the extent one would expect" given Tecarlo's complaints of disabling symptoms and limitations. Id. The ALJ did not evaluate Tecarlo's pain and limitations solely based on his daily activities, but considered multiple other factors as well. The ALJ considered Tecarlo's treatment, finding it essentially routine and conservative, and generally successful in controlling his symptoms. R. 28. The ALJ also noted that Tecarlo was not entirely compliant with his prescribed treatment, which also suggests that his symptoms may not be as limiting as alleged, noting that Tecarlo "has not presented convincing evidence he could not afford treatment and he could not obtain free treatment in the community." R. 29. The ALJ noted that Tecarlo has not consistently complained of and sought treatment for symptoms related to his alleged impairments, and that he went long periods without treatment or medical appointments for his impairments in 2018 and 2019. Id. Indeed, Tecarlo stopped having regular appointments with Dr. Wolfe in September 2018, and only visited Dr. Bravo once for his cubital tunnel syndrome. The ALJ also referenced Tecarlo's history of complaints of the same allegedly disabling conditions and symptoms for many years before his alleged onset date, and the record does not suggest that his impairments became notably worse since his amended alleged onset date. R. 30. Thus, the ALJ determined that Tecarlo's statements concerning his symptoms were not entirely consistent with the evidence in the record.

16

Unlike the ALJ in Brown, the ALJ here thoroughly discussed Tecarlo's self-reports and testimony, the objective medical evidence, and the medical opinions. He recognized Tecarlo's limited daily activities but cited specific evidence as to why those activities may not be as limited as alleged based upon Tecarlo's objective examination findings and progress notes in the record. Considering Tecarlo's treatment notes, together with the medical opinions, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Tecarlo's statements regarding the extent of his limitations. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)

## **CONCLUSION**

Accordingly, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Tecarlo's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: November 29, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge