CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 04 2022

JULIA C. DUDLEY, CLERK
BY: A Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TECARLO B., ) | |
| ) | |
| Plaintiff ) | Civil Action No. 7:20-CV-473 |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| Social Security, ) | By: Michael F. Urbanski |
| ) | Chief United States District Judge |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on November 29, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Tecarlo B. (Tecarlo) has filed objections to the R&R and this matter is now ripe for the court's consideration.

### I. Background

Tecarlo filed an application for supplemental security income (SSI) on January 11, 2018, alleging disability beginning February 13, 2017, but later amended to January 11, 2018. Tecarlo was 38 years old at the alleged onset date. He claims disability based on left hip arthritis with total hip replacement, degenerative disc disease in his lumbar spine, osteoarthritis of his knees, right hip, and elbow, obesity, asthma, and cubital tunnel syndrome. The administrative law

judge (ALJ) found that those impairments were severe, but that none of the impairments met or medically equaled a listed impairment. The ALJ further found that Tecarlo had the residual functional capacity (RFC) to perform sedentary work except that he could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for two hours and sit for six hours in an eight-hour workday, would need to be able to alternate between sitting and standing at will, could occasionally push, pull, climb, or crawl, and frequently balance, stoop, kneel, or crouch. The ALJ found Tecarlo should avoid concentrated exposure to cold, humidity, vibration, pulmonary irritants, chemicals, and hazards such as moving machinery and heights. He was limited to frequent handling, fingering, and feeling. Based on the testimony of a vocational expert, the ALJ concluded that Tecarlo could do work such as that of a document sorter, or sorter, both of which were sedentary unskilled jobs that exist in significant numbers in the national economy. Therefore, the ALJ determined that Tecarlo was not disabled. R. 15-32. The Appeals Council denied Tecarlo's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Tecarlo has objected to two of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

2

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which

3

specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them,

4

> and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

5

## IV. Plaintiff's Objections[2]

Tecarlo objects to the following findings of the magistrate judge: (1) The ALJ properly assessed Tecarlo's RFC based on his determination that the opinion of consultative examiner Sehrish Memon, M.D., was more persuasive than the opinion of Tecarlo's treating physician, Michael W. Wolfe, M.D.; and (2) The ALJ properly considered Tecarlo's subjective allegations.

For SSI cases filed after March 27, 2017, the ALJ evaluates medical opinions in accordance with 20 C.F.R. § 416.920c.[3] Consideration of medical opinions is expressed in terms of how persuasive they are. 20 C.F.R. § 416.920c(b). Medical opinions are evaluated for supportability, consistency, relationship with the claimant (including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship), specialization, and other factors that tend to support or contradict a medical opinion. The most important factors are supportability,[4] and consistency.[5] 20 C.F.R. § 416.920c(b) and (c). The ALJ does not defer or give specific evidentiary weight to any medical opinion, including those from a claimant's medical source. 20 C.F.R. § 416.920c(a). Although the amended regulations no longer discuss the "weight"

---

[2] Detailed facts about Tecarlo's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 21) and in the administrative transcript (ECF No. 11) and will not be repeated here except as necessary to address his objections.

[3] See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

[4] "Supportability" is explained as, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1).

[5] "Consistency" is explained as "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

given to medical opinions, the ALJ's reason for finding an opinion persuasive or unpersuasive still must be supported by substantial evidence.

The crux of Tecarlo's argument is that if the ALJ had found the opinion of Dr. Wolfe to be more persuasive than that of Dr. Memon, he would have found Tecarlo disabled. This is because in Dr. Wolfe's opinion, Tecarlo could stand and walk less than two hours per day and carry less than ten pounds occasionally. He indicated that Tecarlo could occasionally balance but never climb, kneel, crouch, crawl, or stoop. He found that to relieve pain, Tecarlo would need more rest than the lunch break and mid-morning and afternoon breaks typically offered in the workplace and stated that Tecarlo would need three hours of rest involving lying down or reclining in a supine position during an eight-hour workday. He also checked a box indicating that Tecarlo would be absent from work more than three times per month either because of his impairments or for treatment of his impairments. R. 591-95. These limitations would preclude sedentary work.[6]

Dr. Memon noted that Tecarlo had a slow gait but was able to walk around the exam room. He had left hip weakness on exam and a straight-leg test was positive on the left. He was able to squat and rise with difficulty. He was able to stand from a sitting position without assistance but had some difficulty getting on and off the exam table. He could walk on his heels and toes with moderate difficulty and tandem walking was abnormal. He could stand but not hop on his right leg and could not stand or hop on his left leg. He had tenderness to

---

[6] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567.

7

palpation of his left hip and knee. In Dr. Memon's opinion, Tecarlo could be expected to stand two hours and walk 15 minutes at a time in an 8-hour workday before requiring a break due to pain. Dr. Memon also found that Tecarlo could carry ten pounds frequently and twenty pounds occasionally. R. 585-89. Dr. Memon did not state how long Tecarlo's breaks would need to be or whether he would need to lie down.

The ALJ did not find Dr. Wolfe's assessment persuasive because "it was more restrictive than warranted by the medical evidence of record." R. 27. In support of his finding, the ALJ cited to the all the medical evidence. R. 27, 275-1009. Rather than point out evidence that conflicted with Dr. Wolfe's assessment, the ALJ stated:

> [Tecarlo] had a sedentary residual functional capacity based on his impairments, but it was not as reduced as suggested by Dr. Wolfe. For example, he could lift or carry twenty pounds instead of less than ten pounds occasionally. In addition, he could occasionally instead of never climb and crawl as well as frequently instead of never stoop, kneel, and crouch. Never performing any postural movements was simply unrealistic. The claimant sat through the hearing as well as stood and walked in and out of the hearing room without assistance, so it was clear that he could do some stooping. He could also stand or walk for two hours instead of less than two hours in an eight-hour workday. Although Dr. Wolfe regularly treated the claimant for his orthopedic issues since 2017, his physical examinations and treatment notes indicated far fewer limitations than his assessment.

R. 27-28.

The ALJ found Dr. Memon's opinion persuasive because "a sedentary residual functional capacity was generally consistent with the medical evidence of record," again citing to the all the medical evidence. R. 26, 275-1009. The ALJ also cited to the opinions of the state agency physicians who found that Tecarlo could stand for four hours, walk for four hours, and sit for six hours in an eight-hour workday. The ALJ found the opinions persuasive "because they were generally consistent with a sedentary residual functional capacity based on

8

the combination of his impairments," once again citing to the entire medical record. Id. The ALJ reduced the amount of standing and walking required based on the physical examination findings in Dr. Memon's opinion. R. 25.

These explanations fall short of what is required to explain the relative persuasiveness of the opinions. First, in the narrative discussion, the ALJ is supposed to describe how the evidence supports each conclusion, citing specific medical facts, such as laboratory findings, and nonmedical evidence, such as daily activities and observations. Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. 1996). Here, the ALJ did not cite to any specific medical facts but cited to the entire record when explaining why he did or did not find an opinion persuasive.

To be sure, the ALJ summarized the medical evidence in the record, R. 20-24, but he did not indicate how the evidence showed that Tecarlo could lift or carry ten pounds occasionally and twenty pounds frequently. Nor did he cite evidence showing Tecarlo could stand or walk for two hours rather than less than two hours, that he would not need to take extra breaks, or that he would not miss work at least three days per month because of his impairment. In Monroe v. Colvin, 826 F.3d 176, 190-91 (4th Cir. 2016), the Fourth Circuit Court of Appeals remanded a case where the ALJ described the evidence in the record but failed to explain how the evidence supported his assessment of the opinions provided by medical providers.

> The ALJ stated that he gave that opinion only "limited weight" based on a determination that "the objective evidence or the claimant's treatment history did not support the consultative examiner's findings." A.R. 20. However, the ALJ did not specify what "objective evidence" or what aspects of Monroe's "treatment history" he was referring to. As such, the analysis is incomplete and precludes meaningful review.

9

Id., 826 F.3d at 191. "In other words, the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe, 826 F.3d at 189 and Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)) (emphasis in original). The ALJ did not do that here.[7]

Also, the ALJ did not address the supportability and consistency of the opinions in a way that allows for meaningful review. The more relevant the objective medical evidence and supporting explanations presented by a medical source are, the more persuasive the medical opinion will be. 20 C.F.R. 416.920c(c)(2). The ALJ did not discuss the objective medical evidence and explanations offered by Dr. Wolfe, i.e., that Tecarlo's limitations were based on his having had his left hip replaced and MRI evidence of degenerative disc disease at L5-S1. R. 593. And while the ALJ did state broadly that Dr. Wolfe's opinion was not consistent with the medical evidence of record, he did not identify the inconsistent evidence.

Finally, the ALJ stated that "[Tecarlo] had a sedentary residual functional capacity based on his impairments, but it was not as reduced as suggested by Dr. Wolfe." R. 27. The ALJ made a similar statement about the opinions of the state agency physicians, finding "the opinions persuasive because they were generally consistent with a sedentary residual functional capacity based on the combination of his impairments. R. 25.

It is error, although not per se reversible error, to express RFC before analyzing a claimant's limitations function-by-function. Monroe, 826 F.3d at 188. It becomes reversible

---

[7] In addition, there is no logical bridge between the ALJ's finding that Tecarlo was able to walk in and out of the hearing room and sit down for the hearing and his finding that he could "do some stooping."

error "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). In this case, the ALJ dismissed Dr. Wolfe's assessment of Tecarlo because Dr. Wolfe suggested a greater level of impairment than would support a finding that he could do sedentary work. But the ALJ did not assess Tecarlo's capacity to perform functions relevant to sedentary work and did not point to evidence in the record that contradicted Dr. Wolfe's findings. This is the type of determination that calls for a remand because it frustrates meaningful review. Moreover, there is other evidence in the record that supports Dr. Wolfe's limitations on walking and standing, such as an assessment at a pain management clinic where Tecarlo described sharp, constant pain in his knee and an aching pain in his back and imaging showed osteoarthritis in his knee. R. 815, 823. The ALJ's failure to discuss the evidence as it relates to Dr. Wolfe's opinion makes it impossible to conclude that the ALJ's determination is supported by substantial evidence.

Based on the foregoing, the court will **SUSTAIN** Tecarlo's objection to the magistrate judge's finding that the ALJ's assessment of Tecarlo's RFC is supported by substantial evidence and **REMAND** this case for further proceedings. Because the court finds that remand is appropriate for the reasons stated, it will not address Tecarlo's argument that the ALJ did not properly evaluate his subjective complaints of pain.

**V. Conclusion**

For the reasons stated, the court **SUSTAINS** Plaintiff's first objection to the Report and Recommendation, **GRANTS** in part his motion for summary judgment, and

11

**REMANDS** this case to the Commissioner for further proceedings consistent with this opinion.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: January 4, 2022

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Chief United States District Judge